UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Anthony Rorrer, | ) | CASE NO. 5:11CV1024 |
| Plaintiff, | ) ) | JUDGE JOHN R. ADAMS |
| v. | ) ) | |
| City of Stow, et al., | ) ) | **MEMORANDUM OF OPINION** |
| Defendant. | ) ) | **AND ORDER** |

This matter appears before the Court on Defendant City of Stow's motion for summary judgment (Doc. 84). The motion for summary judgment is GRANTED.

I.  **Factual Background and Procedural History**

The core, relevant facts of this matter are undisputed. Plaintiff Anthony Rorrer was employed by the City of Stow as a firefighter beginning in 1999. On July 4, 2008, Rorrer was injured and lost sight entirely in his right eye. The parties agree that Rorrer's condition is permanent in that he will never regain vision in that eye. In roughly September of 2008, Rorrer sought the right to return to work with Stow and was advised to see the Stow Fire Department's physician, Dr. Moten. Ultimately, Rorrer never received authorization to return to work.

Rorrer, however, did request an accommodation under which he claimed he could return to work. Specifically, Rorrer sought to return to work as a firefighter while not being required to operate a fire apparatus with lights and sirens. Stow indicated to Rorrer that this was an essential function of his job and that therefore his requested accommodation was not reasonable. Rorrer also requested a transfer to the Fire Prevention Bureau. Stow similarly rejected this request, indicating that the job still required Rorrer to perform all of the essential functions of a

firefighter. Stow also indicated that it had no current openings in the Bureau. In October of 2009, Stow ended Rorrer's employment.

On May 19, 2011, Rorrer filed the instant suit, raising claims under the ADA and equivalent Ohio law, including failure to accommodate and failure to engage in the interactive process. Rorrer also raised a claim of retaliation and a claim arising under 42 U.S.C. § 1983. Stow has moved for summary judgment on each of Rorrer's remaining claims.[1] The motion is now ripe for resolution by the Court.

## II.    Law and Analysis

### A. Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(a). The initial burden of showing the absence of any "genuine issues" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing former Fed.R. Civ.P. 56(c)).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. (quoting former Fed.R. Civ.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id*. at 252. Moreover, the Court must view a summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc*., 369 U.S. 654, 655 (1962).

---

[1] While Rorrer appears to argue that Stow did not move for summary judgment on his § 1983 claim, Stow clearly moved for summary judgment on this claim. See Doc. 84-1 at 17.

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). Moreover, Fed.R. Civ.P. 56(e) states as follows:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> …
>
> (2) consider the fact undisputed for purposes of the motion; [or]
>
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it[.]

Accordingly, summary judgment analysis asks whether a trial is necessary and therefore is appropriate when there are no genuine issues of fact. *Anderson,* 477 U.S. at 250.

### B. Disability Claims

The federal Americans With Disabilities Act ("ADA") prohibits a covered employer from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to ... the hiring, advancement, or discharge of employees ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Plaintiff is qualified if, and only if, he can perform the essential functions of the job in question. The Court must give some deference to the employer's judgment in determining what functions of a job are essential. *Id*. An employer cannot discriminate against a qualified employee with a disability by not making reasonable

3

accommodations, which accommodations for that employee's known limitations do not impose an undue hardship on the operation of the employer's business. 42 U.S.C. § 12112(a) & (b)(5)(A).

There is no dispute that Rorrer's termination was the result of his disability. Accordingly, the direct evidence standard expressed in *Monette* applies to this matter. Under this standard,

> 1) The plaintiff bears the burden of establishing that he or she is "disabled."
>
> 2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: a) without accommodation from the employer; b) with an alleged "essential" job requirement eliminated; or c) with a proposed reasonable accommodation.
>
> 3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996) (overruled on other grounds by *Lewis v. Humboldt Acquisition Corp., Inc.* 681 F.3d 312 (6th Cir. 2012)).

In determining the essential functions of Rorrer's position as a firefighter, the parties appear to disagree with respect to whether Stow adopted the National Fire Protection Association ("NFPA") guidelines as standards for its firefighters. This disagreement is particularly perplexing in that Rorrer himself alleged in his complaint that Stow had relied on the NFPA guidelines, and Stow *admitted* in its answer that it had relied on those guidelines. Rorrer appears to now contend that discovery has created some issue of fact surrounding whether Stow formally adopting these guidelines and consistently applied them.

The Court finds no issue of fact surrounding whether Stow utilized the NFPA guidelines. The record is clear that Stow consistently utilized the Guidelines and Rorrer himself understood that he had to satisfy those guidelines in order to work for Stow.

Moreover, even if Stow has not formally adopted the NFPA guidelines, the record is replete with evidence that Stow's chief, Chief Kalbaugh, and its physician, Dr. Moten, relied upon those guidelines. Further, even if the guidelines were not adopted, the Court would still be required to give deference to Stow's judgment regarding what the essential functions of the position were. As Stow's judgment reflects that it agrees with the content of the NFPA guidelines with respect to the essential functions of its firefighters, whether or not Stow formally adopted the guidelines is legally irrelevant. Giving the appropriate deference to Stow as the employer, the Court would still conclude that the essential functions of Rorrer's job mimic those laid out in the NFPA guidelines. Finally, those essential functions were detailed in writing by Stow and are as follows:

> 1. Performs necessary basic and advanced life support on sick, injured, or convalescent persons at the sites of emergencies or en route to hospitals or other medical facilities. Patient care may include, but not be limited to: hemorrhage control and treatment for shock, intravenous therapy, medication administration, electrocardiogram interpretation, manual external defibrillation or synchronized cardioversion, cardiopulmonary resuscitation, airway maintenance via endotracheal intubation or cricothyroidotomy, and fracture stabilization and pain control.
> 2. Responds to fire alarms, lays and connects hose, holds nozzles and directs water streams, raises and climbs ladders, uses chemical extinguishers, bars, hooks, lines, and other equipment.
> 3. Records event information including patient condition, patient history, treatments, vital signs, and scene observations.
> 4. Observes established basic and advanced medical protocols.
> 5. Supplies patient information to physicians via radio transmission or direct contact.
> 6. Maintains accurate knowledge of city streets.
> 7. Maintains contact with the department by pager and responds to request for assistance when available.
> 8. Insures operational readiness of all equipment to which he/she is assigned.
> 9. May operate emergency vehicles en route to emergencies and during patient transport to the hospital. As assigned, drives and operates motordriven firefighting equipment.
> 10. Performs fire extinguishment, ventilation, rescue, salvage and overhaul.
> 11. Participates in regularly scheduled department training.

> 12. Shares in completion of normal department tasks: hose testing, hydrant flushing and maintenance, maintenance performed by vehicle operators, commercial inspection, and fire prevention programs.
> 13. Performs various maintenance tasks on apparatus and equipment.
> 14. Maintains inventories of equipment and supplies.
> 15. Presents a professional image to the public through dress, conduct, and attitude. Arrives for duty property clothed and in good physical and mental condition.
> 16. When assigned to fire prevention, works under the direction of a supervisor, performs inspections and clerical duties as required.
> 17. Maintains living, equipment, and maintenance areas in a clean and proper manner.

Doc. 103-32 at 1-2.

Rorrer makes much of the fact that the essential job function at issue, number 9 above, utilizes the term "may" when discussing operating a vehicle in an emergency setting. Rorrer contends that this clearly demonstrates that an accommodation removing this function was reasonable.

In so arguing, Rorrer ignores the entirety of the evidence in the record. Rorrer ignores that he conceded during his deposition that he could not refuse to drive an apparatus if ordered to do so. Moreover, the record is replete with evidence that no firefighters within Stow were able to opt out of any of the essential functions detailed above. Thus, Rorrer's reliance on the term "may" does not create a genuine issue of material fact regarding whether it was an essential job function.

Assuming arguendo that the Court needs to reach the final prong discussed in *Monette*, the Court finds no genuine issue of fact remains regarding whether Stow has shown that the function is a business necessity and that the proposed accommodation would be an undue burden.

Rorrer appears to contend that his proposed accommodation is overly simplistic. He is on a three-man crew, so it should raise no issue if he cannot drive in an emergency situation. In

6

so arguing, Rorrer ignores the very nature of his occupation – responding to emergency situations. While Rorrer opines, without evidentiary support, that it is highly unlikely that the need for him to drive would arise, the Court concludes otherwise. The very nature of Rorrer's occupation mandates that he be able to immediately respond to emergency situations. In fact, lives depend on the ability of him and his crew to respond quickly to life threatening situations. Those situations involve risk not only to members of the general public, but also direct risks to those Rorrer works with on a daily basis. To the Court, it is clear that Rorrer's admitted inability to drive in an emergency situation would place an undue burden on Stow and ultimately enhance the risk of harm to Rorrer's co-workers. Further, the function at issue is clearly a business necessity. With three-man crews working, Stow must be ensured that all three firefighters can drive under emergency circumstances.[2]

While it is admirable that Rorrer remains willing to continue to work as a firefighter for Stow, there is no genuine issue of material fact that Rorrer cannot perform the essential functions of that occupation. Moreover, as detailed above, Rorrer's requested accommodation to remove an essential function was not reasonable. The function as issue is quite clearly a business necessity and eliminating it would place an undue burden on Stow.

Rorrer also contends that he requested a different accommodation, a transfer to the Fire Prevention Bureau. Stow contends that no position was available in the Bureau and therefore it could not fulfill this requested accommodation. Rorrer's contentions that there existed an opening are not based in fact. Instead, Rorrer relies upon the opinion of another member of his union that a retirement *should* have created an opening. In contrast, Stow relies upon the affidavit of Chief Kalbaugh which establishes that throughout Rorrer's employment, only two

---

[2] One wonders what would occur if Rorrer's co-workers were injured performing their duties and Rorrer was unable to safely transport them for treatment.

7

full-time positions existed in the Bureau and both were and are occupied by firefighters senior to Rorrer. Rorrer appears to rely upon the fact that there was an individual, Rick Henkel, that remained on light duty work in the Bureau for nearly two years. Again, however, there is simply no dispute that any such assignment in the Bureau is designed to **transition** the employee back to full time work. Rorrer cannot be transitioned. Moreover, once it became clear that Henkel could not transition, he was forced to retire. Accordingly, there is no genuine issue of fact surrounding this requested accommodation. Rorrer sought to force Stow to alter the structure of the Bureau to allow his transfer. Stow had no legal obligation to create a new position to accommodate Rorrer.

Based upon the above, Rorrer's failure to accommodate claim fails as a matter of law. Similarly, because Rorrer could not perform the essential functions of his job and never proposed a reasonable accommodation, his claim that Stow failed to engage in the interactive process must also fail.

Because the essential elements of an ADA claim and a claim under the Ohio handicap discrimination statutes are identical, the analysis of Rorrer's ADA claim also resolves his state law claims. *Hendrick v. Western Reserve Care System*, 355 F.3d 444, 452 (6th Cir. 2004), *Columbus Civ. Serv. Comm. v. McGlone*, 697 N.E.2d 204 (Ohio 1998). Because Rorrer's ADA claims fail, his Ohio claims fail as well.

    **C. <u>Retaliation Claim</u>**

Rorrer also contends that his termination was the result of unlawful retaliation. The Court's finds Stow's motion well taken on this claim.

A plaintiff alleging retaliatory discharge must prove the following: (1) that he engaged in a protected activity; (2) that he was the subject of an adverse employment action; and (3) that a

causal link existed between the protected activity and the adverse action. *Chandler v. Empire Chem., Inc.,* 99 Ohio App.3d 396, 402 (1994) (citing *Jackson v. RKO Bottlers of Toledo, Inc.,* 743 F.2d 370, 375 (6th Cir. 1984)).

Rorrer contends that his termination was retaliation for testifying in an arbitration proceeding in late March of 2008. Rorrer seeks to bolster this claim by offering extensive extraneous and irrelevant information that attacks Chief Kalbaugh's integrity. Essentially, Rorrer contends that Chief Kalbaugh held retaliatory animus toward anyone that "crossed" him and that a jury could reasonably conclude that such animus motivated Rorrer's termination.

The same *McDonnell-Douglas* burden shifting statute applied in a race discrimination analysis applies in retaliations cases. The plaintiff must first make out a prima-facie case of retaliation, the burden then shifts to the defendant to give a legitimate, non-discriminatory explanation for its actions regarding the plaintiff. *Gribcheck v. Runton,* 245 F.3d 547, 550 (6th Cir. 2001). If the defendant satisfies his burden, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered explanation is pretextual. *Id.*

Assuming that Rorrer has met his initial burden, Stow has likewise met its burden of providing a legitimate, non-discriminatory explanation. As detailed above, Rorrer was terminated because he was unable to perform all of the essential functions of his occupation. For that matter, Rorrer concedes that he could not perform all of those functions. As the Court has held above, Rorrer also was unable to provide to Stow any reasonable accommodation that would allow him to continue on as a firefighter.

In response, Rorrer has failed to raise a genuine issue of material fact regarding pretext. Rorrer attempts to rely solely upon temporal proximity to demonstrate pretext. The Sixth Circuit, however, has repeatedly cautioned "about the permissibility of drawing an inference of

9

causation from temporal proximity alone." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010). Usually, the temporal proximity must be "coupled with other indicia of retaliatory conduct." *Id.* (quoting *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006)). Other than the unfounded allegations that Chief Kalbaugh retaliated against *everyone*, Rorrer has offered no other indicia of retaliatory conduct. Instead, the record is clear that Stow relied upon the medical opinion of its physician to terminate Rorrer.

In that respect, the Court would note that Rorrer argues at length surrounding the propriety of Dr. Moten opining on Rorrer's fitness for duty when Dr. Moten had never personally examined Rorrer. In so doing, Rorrer ignores the fact that his medical condition has never been in dispute – he suffers from monocular vision. No amount of hands-on examinations by physicians will alter that conclusion. As Dr. Moten was aware of that fact, he had more than ample basis for reaching his conclusion regarding Rorrer's ability to perform the essential functions of his job.

Furthermore, Rorrer's contentions that pretext may be demonstrated by virtue of the fact that he remained an active firefighter with two other local municipalities after his disability are also rejected. Stow was well within its rights to establish the essential functions for its firefighters. The fact that Rorrer has been able to work as a firefighter in other municipalities sheds no light on whether those municipalities share the same essential functions or have chosen to accommodate Rorrer in some manner, despite not being legally obligated to do so. In other words, Rorrer's other employment does not assist the Court's review in any manner.

Based upon the above, Rorrer's retaliation claim fails as a matter of law.

### D. § 1983 Claim

This Court previously dismissed Rorrer's § 1983 claim against Chief Kalbaugh. In so doing, the Court held as follows:

> It is clear from the allegations in the amended complaint that Rorrer's testimony involved solely a matter of private concern – the discipline of a co-worker. While Rorrer may have been involved with his union at some point, the complaint makes clear that he testified truthfully not as a matter concerning the union, but because he witnessed the incident and felt his co-worker was being unfairly disciplined. Accordingly, the content of his speech was fully a matter of private concern, never touching on public concerns at any point in time.
>
> As this Court finds that the content of the speech was purely private, its setting (a confidential arbitration proceeding) was purely private, and only its form (under oath) would arguably give it First Amendment protection, the Court finds the partial motion to dismiss well taken. Rorrer's speech was not a matter of public concern under the tests set forth by the Supreme Court. Accordingly, his claim fails as a matter of law.

Doc. 46 at 6-7. This same rationale applies equally to Rorrer's identical claim against Stow. Accordingly, Stow's motion on this claim is also well taken.

### E. Remaining Motions

Also pending before the Court are Stow's motion to strike certain declarations filed by Rorrer, and Rorrer's motion to strike the reply brief filed by Stow. Initially, the Court finds that Rorrer clearly contravened this Court's order regarding the identification of witnesses when he provided the declarations at issue. The Court's order was designed to ensure that only necessary depositions would occur. It was not designed to allow Rorrer to sandbag Stow with wholly unanticipated declarations. However, as the Court's order herein is not altered by allowing those declarations to remain in the record, the motion is DENIED AS MOOT.

The Court would note that to the extent that a reviewing court would conclude that a genuine issue of material fact is generated by those precise declarations, the Court would find

11

them to be properly stricken as in direct violation of Rorrer's obligation to identify witnesses in a timely manner to facilitate deposition practice.

Similarly, Rorrer's motion to strike is DENIED. The Court reviewed only the substance of the reply brief, setting aside all of its argumentative rhetoric. Accordingly, no prejudice stemmed from the language choice employed by Stow in its brief.

### III. Conclusion

Stow's motion for summary judgment is granted. Judgment is hereby entered in favor of Stow. The complaint is hereby dismissed.

IT IS SO ORDERED.

DATE: February 4, 2013 */s/ John R. Adams*
Judge John R. Adams
UNITED STATES DISTRICT COURT